**Manous ENGLISH, Jr., Appellant,**

v.

**Eula C. ENGLISH, Appellee.**

**No. 14–00–00093–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 15, 2001.

Rehearing Overruled May 3, 2001.

Elizabeth Ann Mobley, Conroe, for appellants.

Joe Scott Evans, Groveton, for appellees. ·

Panel consists of Justices YATES, WITTIG, and FROST.

## OPINION

WITTIG, Justice.

Manous English appeals an enforcement order in favor of his former spouse, Eula C. English. This family law case addresses the effect on the parties of a final judgment when no supersedeas bond is filed. We also address the option language contained in the final judgment. The issues are presented via appeal of an enforcement order seeking to give effect to the earlier final judgment affording both parties an option period to buy out their former spouse's interest in the homestead. Appellant contends that his earlier appeal of the final divorce decree did not stay the parties' option period to purchase the homestead. Thus, the option period expired. He further contends, that the option language required not only its exercise, but actual closing of the sale within the option period. For the reasons stated

below, we affirm in part, and we reverse and remand on the supersedeas issue.

### Background

Eula and Manous were divorced in January 1998. The original decree afforded, *inter alia,* both parties options to buy out the other's interest in the homestead. If neither exercised their options, the home was to be sold and the proceeds shared. The specific language of the option required Eula to buy out Manous "by exercising the option herein granted, on or before one hundred-eighty (180) days after this Court executes this decree...."[1] The option periods could be extended by agreement.

Manous was seemingly dissatisfied with the results of the first trial and gave timely notice of appeal. However, Manous never filed a supersedeas bond. The original appeal to this court was dismissed for want of prosecution January 7, 1999. Thereafter counsel for Eula notified his counterpart by letter dated June 8, 1999, that Eula exercised her option, had already obtained a loan, ordered the title work, and set a closing for July 7, 1999. Manous didn't show up at the closing, and the trial court found he never intended to do so. The trial court, in its enforcement order, concluded that the 180 day option period for Eula did not begin to run until after Manous' appeal was dismissed for want of prosecution. Implicit in the holding was reliance that the final divorce decree was somehow stayed during the appellate process. Otherwise, the 180 day option period would have long since passed.

In this appeal of the enforcement order, Manous raises two issues. He maintains the 180 day option period ran as recited in the decree, from the date of signing by the trial court. Because the judgment was not superseded, Eula was able to exercise her option during the pendency of the appeal. Eula counters that TEX.FAM.CODE ANN. § 9.007(c) prohibits the trial judge from rendering further orders to assist implementation of or to clarify the property division. In his second issue, Manous contends Eula did not properly exercise her option because she did not *purchase* the property on a timely basis in any event.

### Exercising the Option

■ We will address the second issue first. Because of our eventual remand of this cause, for the sake of judicial economy, we will briefly address this non-dispositive issue. Appellant argues an option is a privilege or right to purchase property at a fixed price within a certain period and cites a footnote in this court's divided opinion of *Casa El Sol–Acapulco, S.A. v. Fontenot,* 919 S.W.2d 709, 717 fn. 9 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd by agr.). There, a majority set aside jury findings and found a unilateral option notwithstanding the fact that the option was but one segment of 37 documents settling multiple disputes. *Id.* at 720 (Sears, J., dissenting). Whether or not the option *sub judice* is bilateral or unilateral (which could affect forfeiture issues) is not now before us. Rather the issue is specifically whether Eula timely exercised her rights. Both parties cite *Maxwell v. Lake,* 674 S.W.2d 795 (Tex. App.—Dallas, 1984, no writ). *Maxwell* is a more materially in point decision. In *Maxwell,* the optionee gave written notice of acceptance on the very last day of the option period. As here, it was argued the purchase must be completed within the

---

**1.** There is no contention that the use of the word "executes" means anything other that

the signing of the final decree.

option period. In direct parallel to our facts, there were no explicit terms concerning the method of exercising the option. As did the Dallas court, we conclude and hold that where the option instrument is silent regarding the method of exercising the option, giving timely notice to the optionor and subsequently tendering performance within a reasonable time is sufficient to exercise the option. *Id.* at 798. Therefore, *if* Eula gave notice of her intent to exercise the option within the applicable 180 day period, such notice would be sufficient to trigger her rights under the divorce decree.

### The Lack of Supersedeas Bond

■ The issue of tolling this 180 day period is not so straightforward. What is the effect of a final divorce decree when no supersedeas bond has been filed? Except as otherwise provided by statute, enforcement of divorce decrees are governed by the Texas Rules of Civil Procedure. Tex. Fam.Code Ann. § 9.001(b); *Winkle v. Winkle,* 951 S.W.2d 80, 89 (Tex.App.—Corpus Christi, 1997, pet. denied); Rule 627 provides for execution 30 days after a final judgment. Tex.R.Civ.P. 627. In order to stay the execution or enforcement of a final decree, a supersedeas bond is required. *Id. Winkle* noted no exception to the literal application of Rule 627, providing that execution would issue 30 days after rendition of final judgment or after the overruling of any motions for new trial.[2] *Id.* "The execution may not be collaterally attacked and must be respected until it is vacated in a direct proceeding instituted in the court which ordered it to be issue." *Id.* (citing *South Falls Corp. v. Davenport,* 368 S.W.2d 695, 697 (Tex.Civ.

App.—Dallas 1963, no writ)); *Roosth v. Daggett,* 869 S.W.2d 634, 635 fn. 1 (Tex. App.—Houston [14th Dist.] 1994, no writ) (judgment creditor in divorce case has right to execution pending appeal where no supersedeas bond filed.); *Thomas v. Thomas,* 917 S.W.2d 425, 429–30 (Tex. App.—Waco 1996, no writ) (applying Rule 627 by not waiting 30 days before releasing funds); *Spiller v. Sherrill,* 518 S.W.2d 268, 272 (Tex.Civ.App.—San Antonio, 1974, no writ) (discussing right of appellant in divorce case to suspend judgment by filing appeal and supersedeas bond).

■ In general, the right to enforcement of adjudicated rights follows as a matter of law, even when the judgment may not expressly provide for execution or order of sale. *Swafford v. Holman* 446 S.W.2d 75, 79–80, (Tex.Civ.App.—Dallas, 1969, writ ref'd, n.r.e.) (internal citations omitted). "The term Execution [sic] is broad enough to include such writ as may be necessary to enforce the relief awarded to a party in a judgment, including an order of sale." *Id.* at 80. Nor may Eula be comforted concerning the exact language of "let execution issue."[3] Such language is surplusage. *State v. Blair,* 629 S.W.2d 148, 150 (Tex.App.—Dallas, 1982), *aff'd,* 640 S.W.2d 867 (Tex.1982). "Execution will issue on any valid judgment when execution is proper, irrespective of its inclusion in the judgment." *Id.* (internal citations omitted).

### The Effect of Section 9.007(c)

■ Section 9.007(c) provides: "The power of the court to render *further* orders to assist in the implementation of or to clarify the property division is abated

---

2. In *Winkle,* the thrust of the issue was the premature order of execution or turnover, prior to the expiration of 30 days post judgment.

3. The original divorce decree does not specifically provide for execution, but this aspect is not noted by either party.

while an appellate proceeding is pending." TEX.FAM.CODE ANN. § 9.007(c) (emphasis added). Neither party has cited, nor have we found, any authority interpreting this section.[4] We are instructed by the legislature that generally, "words shall be given their ordinary meaning." TEX.GOV'T CODE ANN. § 312.002. The legislature is presumed to have acted with knowledge of cases interpreting a statute. *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999). Therefore the legislature knew that in family law cases the rules of civil procedure generally would apply. *See* TEX.FAM. CODE ANN. § 9.001(b). We likewise presume the legislature enacts statutes with knowledge of existing law. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Therefore, the legislature was aware that a judgment creditor has a statutory right to have execution issue to enforce a judgment pending appeal where no supersedeas bond has been filed or approved. *Anderson v. Lykes*, 761 S.W.2d 831 (Tex.App.—Dallas 1988, no writ); TEX. R.CIV.P. 627; *see* TEX.R.APP.P. 47.2(a)(3). Looking at the plain language of the statute, the provision deals with *further* orders or clarification. It stands to reason there must first be a decree of divorce or annulment. Without an existing decree, there was nothing to appeal. A *further* order requires a prior order or decree. After an initial decree containing a property division, the trial court is legislatively restrained from rendering further orders to assist in the implementation or clarification of the property division pending appeal. The power of the court to do so is abated. TEX.FAM.CODE ANN. § 9.007(c). The plain statutory language does not stay, supersede or otherwise inhibit the finality of the decree, absent a supersedeas bond. Similarly, the plain language is directed at the power of the court, not the obligations and responsibilities of the parties. Under the statute, the trial court is prohibited from implementing and clarifying the property division by way of further order. However, neither the parties nor the ministerial act of execution of the judgment are proscribed. *Blair*, 629 S.W.2d at 150 (execution in a judgment is merely a direction to a ministerial officer to permit enforcement of the judgment).

The final judgment of the trial court provided both parties an option beginning when the decree was signed. Neither a supersedeas bond nor section 9.007(c) prohibited the free exercise of the option rights. The judgment was sufficiently definite and certain to define and protect the rights of all litigants. *Kimsey v. Kimsey*, 965 S.W.2d 690, 694 (Tex.App.—El Paso 1998, pet. denied). Therefore, the normal rules of construction of judgments apply to its interpretation. *Id.* By its terms, therefore, the option period for Eula ran 180 days after the signing of the original decree.

We review the trial court's order under an abuse of discretion standard. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The trial court correctly interpreted the option language which did not require the actual closing of the homestead purchase. The trial court however was misled to incorrectly apply section 9.007(c) in the context of this case thus requiring reversal. Both parties seemed to assume and persuade the trial court that the initial appeal, standing alone, tolled the parties' obligations under the judgment. Although this mistake of law may not afford post-

---

4. It is not at all surprising that the trial court was led to believe that section 9.007(c) tolled the 180 day option period. In his brief, appellant states that at the enforcement hearing, "all parties accepted the fact that Appellant's (initial) appeal in the underlying case tolled the running of the 180 day option period...."

decree relief, *Marsh v. Marsh*, 949 S.W.2d 734, 745 (Tex.App.—Houston [14th Dist.] 1997, no writ), the original judgment itself also provided that the option period could be extended by agreement.[5] Because that matter was not addressed and given the lack of precedent interpreting section 9.007(c), in the interests of justice, we remand the order of enforcement to the trial court for further proceedings not inconsistent with this opinion. *See* Tex.R.App.P. 43.3(b).

5. Neither the potential agreement issue nor other possible matters in avoidance or forfei-
ture were apparently considered at the enforcement hearing.